UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

LAMBROS VASSILIOU,                                    18-CV-779(NGG)(VMS)

                        Plaintiff,

              -Against-

                                                      **AMENDED COMPLAINT**

THE CITY OF NEW YORK, POLICE DETECTIVE
PHILIP VACCARINO, POLICE DETECTIVE
VINCENT AGOSTINO, SERGEANT PAUL FARELLA,              **JURY TRIAL DEMANDED**
DETECTIVE JELSON GOYCO, POLICE OFFICER
LEONID SHATKIN, POLICE OFFICER VINCENT
SETTEDUCATO, individually and in their respective
capacities as members of the City of New York Police
Department, and POLICE OFFICERS JOHN DOES
NUMBERED 1-6, Unknown and intended to be other
New York City Police Officers Involved in the
Occurrence Herein, Individually and in their respective
capacities as members of the City of New York Police
Department,

                        Defendants.
----------------------------------------------------------------------X

         The plaintiff, LAMBROS VASSILIOU, by and through his attorneys, HARRY C.

DEMIRIS, JR., P.C., complaining of the defendants, jointly and severally, herein respectfully

shows to this Court and alleges the following:

                        **PRELIMINARY STATEMENT**

         1.      This action is brought pursuant to 42 U.S.C. §§1983 and 1988, the Fourth and

Fourteenth Amendments to the United States Constitution, and Article I, §§11 and 12 of the New

York State Constitution and the common law of the State of New York.  Plaintiff LAMBROS

VASSILIOU brings this action for violations of civil rights, false arrest/false imprisonment, abuse,

lack of appropriate care, assault, battery, excessive force, personal injuries, malicious

prosecution, emotional distress, breach of fiduciary duties, negligence, and other wrongful

acts by: THE CITY OF NEW YORK (hereinafter referred to as "CITY"), POLICE DETECTIVE PHILIP VACCARINO (hereinafter referred to as "VACCARINO"), POLICE DETECTIVE VINCENT AGOSTINO (hereinafter referred to as "AGOSTINO"), SERGEANT PAUL FARELLA (hereinafter referred to as "FARELLA"), DETECTIVE JELSON GOYCO (hereinafter referred to as GOYCO),  POLICE OFFICER LEONID SHATKIN (hereinafter referred to as SHATKIN) and POLICE OFFICER VINCENT SETTEDUCATO (hereinafter referred to as SETTEDUCATO), individually and in their respective capacity as members of the City of New York Police Department, and POLICE OFFICERS JOHN DOES NUMBERS 1-6, UNKNOWN AND INTENDED TO BE OTHER NEW YORK CITY POLICE OFFICERS INVOLVED IN THE OCCURRENCE HEREIN, individually and in their respective capacities as members of the City of New York Police Department (hereinafter referred to as "DOES") (hereinafter the Defendants are collectively referred to as "Defendants").

2.      Plaintiff alleges that on November 12, 2016, he was wrongfully stopped, seized, assaulted, handcuffed, detained, restrained, arrested and taken into custody; wrongfully imprisoned; maliciously prosecuted, harassed, abused, threatened, battered and assaulted, was intentionally and/or negligently caused to sustain serious injuries, was subject to an unreasonable, unlawful and unconstitutional search; intimidated; and was the recipient of excessive force - without just cause or provocation - by Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES.

3.      Plaintiff further alleges that Defendants CITY, VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES are individually, jointly and

severally liable for those violations of Plaintiff LAMBROS VASSILIOU's constitutional rights in that said Defendants have:

a)     exhibited deliberate indifference due to Defendants' CITY, VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES conduct, despite their actual knowledge of previous incidents of assault, harassment, intimidation, brutality and abuse of authority toward similarly situated members of the community at large;

b)     tolerated, condoned and encouraged a pattern of brutality, harassment and other civil rights violations and still are hostile to similarly situated members of the community at large;

c)     failed to properly and adequately monitor and investigate such incidents and to supervise and discipline the employees involved;

d)     created an environment and culture in which members of the City of New York Police Department, specifically the undercover narcotics operations of Staten Island, (hereinafter referred to as "Police Department") are encouraged to conceal the misconduct of its members - resulting in the current situation in which members of the Police Department believe they can violate with impunity the rights of persons such as LAMBROS VASSILIOU; and

e)     inadequately selected, trained, monitored and supervised police officers in their employ.

## **JURISDICTION and VENUE**

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1343(a)(3) and (4), this being an action seeking redress, and to recover damages for violations of the Plaintiff's constitutional and civil rights.

5.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

6.      Plaintiff demands a trial by jury on each and every one of the claims as pled herein.

7.      Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§1391(b).

## **PARTIES**

8.      Plaintiff, LAMBROS VASSILIOU was, at all times relevant herein, a resident of the County of Richmond, State of New York.

9.      Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES, are and were at all times relevant herein, Sergeants, Detectives, Police Officers, employees and agents of the Police Department, a municipal agency of THE CITY OF NEW YORK. Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES are being sued individually and in their official capacity.

10.      At all times relevant herein, the above-referenced individual Defendants herein were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the Police Department and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the Defendant CITY at all times relevant herein with the

power and authority vested in them as Sergeants, Detectives, Police Officers, agents and employees of the Defendant CITY and incidental to the pursuit of their duties as employees and agents of the Defendant CITY.

11.   Defendant CITY is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the City of New York.

12.   The individual defendants acted consistently with the policy and custom of the defendant CITY, made a deliberate choice to follow a particular course of action among various alternatives selected by those in the employ of the CITY responsible for establishing final policy with respect to the subject matter involved in this action.

13.   The individual defendants acted in a manner consistent with widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.

14.   The defendants acted in the manner complained of herein due to the CITY's failure to screen, supervise, discipline, train transfer or counsel its employees, including the individual defendants, since those failures amount to a deliberate indifference to the rights of the people with whom the individual defendants come into contact, including the plaintiff.

## STATEMENT OF FACTS

15.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

16.     On or about November 12, 2016, at approximately 4:30 p.m., in the City of New York, County of Richmond, State of New York, Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES were working in their official capacity as employees and agents of the Police Department when they stopped and seized Plaintiff and then assaulted, battered, handcuffed, restrained, wrongfully took Plaintiff into custody all without probable cause, exigency, justification, permission or authority and intentionally or negligently caused Plaintiff to sustain serious injuries while handcuffed and transported in a Police motor vehicle due to the acts and omissions of the Defendants in their conduct and the manner in which the Defendants acted while transporting the Plaintiff in said Police motor vehicle.  Plaintiff was the victim of excessive force, was wrongfully arrested and detained, was wrongfully imprisoned and placed in the back of a police motor vehicle – the Prisoner Van - in which Plaintiff was tossed about for an unreasonably long period of time and transported in an unsafe manner that was carried out either intentionally or negligently, and was maliciously prosecuted. While in police custody, Plaintiff was abused, threatened, battered, assaulted, harassed, was caused to sustain serious injuries and was subject to an unreasonable, unlawful and unconstitutional search.

17.     The incident forming the basis of this claim is part of a pattern of harassment by the defendants directed at residents of Richmond County, including the plaintiff.  In a prior incident in around May of the year prior to the subject incident, Defendants, without any form of lawful justification, stopped the Plaintiff as he was operating his motor vehicle and

demanded that Plaintiff exit his motor vehicle. Two officers then brought Plaintiff to the rear of his motor vehicle while two others entered Plaintiff's motor vehicle and conducted an unwarranted search of the interior of said vehicle, opening the glove compartment and center console and searching the contents thereof. After finding nothing unlawful, the officers permitted Plaintiff to leave after roughly 15 minutes of being detained.

18.     On November 12, 2016, while Plaintiff was lawfully operating his motor vehicle with his two infant daughters heading to the home of Plaintiff's sister for dinner, Plaintiff was stopped by Defendants VACCARINO and GOYCO in the vicinity of the intersection of Pierpont Place and Richmond Hill Road in Staten Island without any lawful cause or justification. Plaintiff's daughter Linda was four years old at the time of this incident and his daughter Andrea was nine years old at that time. Plaintiff was operating a black 1984 Pontiac Trans Am and was coming from his parent's home at 209 Lewiston Street, Staten Island. Plaintiff first heard the pulse of a police siren as he was at the intersection of Pierpont Place and Richmond Hill Road, after just turning from Bridgetown Street onto Richmond Hill Road. Plaintiff pulled his motor vehicle over to the right side of Richmond Hill Road. After Plaintiff stopped his motor vehicle, two police officers approached his vehicle. Those two officers were from NYPD Staten Island Narcotics and believed to be VACCARINO and GOYCO. The two officers approached Plaintiff's motor vehicle, one approaching on each side. Upon information and belief, it was Defendant GOYCO who approached the driver's side while Defendant VACCARINO approached the passenger's side. Defendant GOYCO asked Plaintiff to step out of his motor vehicle and Plaintiff asked why since Plaintiff was unaware of why he was stopped. GOYCO then told Plaintiff that he just needed to ask him a

question and instructed Plaintiff to step out of the vehicle.  Defendant GOYCO refused to give Plaintiff a reason for this stop and repeated his demand for Plaintiff to get out of the vehicle. Plaintiff complied.  Defendants GOYCO and/or VACCARINO escorted Plaintiff to the rear of his motor vehicle and asked Plaintiff why he was nervous.  Plaintiff responded that he was not nervous but simply did not know why he was stopped and did not want to be late to arrive at his sister's home.  Plaintiff's parents were in a motor vehicle behind Plaintiff's motor vehicle at the time of this incident and were also heading to Plaintiff's sister's home.  Officers GOYCO and/or VACCARINO then asked Plaintiff if they would find any heroin if they searched his motor vehicle.  Plaintiff denied having any unlawful narcotics (including heroin) in the motor vehicle.  Defendants then asked Plaintiff if he had any drugs, weapons or sharp objects on his person and Plaintiff responded that he did not.  Defendant GOYCO then, without cause or consent, thrust his hand into Plaintiff's jacket.  Plaintiff asked Defendant what he was doing and Defendant responded "I can do whatever I want."  Defendants GOYCO and VACCARINO then arrested Plaintiff and proceeded to improperly and illegally search Plaintiff's motor vehicle, again without probable cause or consent.  Plaintiff was arrested approximately ten minutes after being stopped.   After handcuffing Plaintiff, Defendants directed Plaintiff's two minor daughters to exit the motor vehicle.

19.    Defendants VACCARARINO and GOYCO lacked probable cause and lacked legal justification to stop the plaintiff or his motor vehicle or to conduct a search of the plaintiff's motor vehicle.

20.    Upon information and belief, VACCARINO and/or GOYCO contacted FARELLA and provided information to FARELLA about the stop of Plaintiff.

21.     Upon information and belief, FARELLA gave permission to GOYCO and VACCARINO to place Plaintiff under arrest.

22.     Upon information and belief, based upon the information provided to FARELLA by GOYCO and/or VACCARINO, FARELLA, as the Sergeant, decided to dispatch the remaining individual defendants to the scene of Plaintiff's arrest.

23.     Upon information and belief, based upon the information provided to FARELLA by VACCARINO and/or GOYCO, FARELLA dispatched the Police van and directed it to the scene of Plaintiff's arrest.

24.     Ultimately, at some point in time between Plaintiff's wrongful stop and arrest and his being taken from the scene of this arrest in the subject Police motor vehicle, which Defendants call the "Prisoner Van", there were three police motor vehicles at the scene of the subject arrest of Plaintiff.

25.     The three Police motor vehicles that were on the scene of the subject arrest consisted of two sedans and one van. One of the sedans was occupied by VACCARINO and GOYCO and was the first vehicle at the scene.  FARELLA, Detective Fahmy and either SHATKIN or SETTEDUCATO arrived at the scene in the second sedan.  The Police prisoner van was driven to the scene containing AGOSTINO and either SHATKIN or SETTEDUCATO.

26.     Each individual defendant played a role in the acts or omissions of Defendants as complained of herein.

27.     Upon information and belief, it was Defendant GOYCO who placed metal handcuffs on Plaintiff with Plaintiff's hands and arms behind his back.   Defendant

VACCARINO was speaking with Plaintiff's daughters while Defendant GOYCO was directly interacting with Plaintiff.   Defendant VACCARINO then directed Plaintiff's nine-year-old daughter to call Plaintiff's ex-wife, the infants' mother, to inform her that Plaintiff had been arrested while transporting the two minors in his motor vehicle and to come pick the daughters up at the scene of this incident.   Plaintiff's ex-wife came to the scene and took the children. As a result of this incident, Plaintiff's ex-wife reported Plaintiff to child protective services.

28.     After handcuffing Plaintiff, the Defendants put him into the subject police van.

29.     At the time the plaintiff was placed in the back of the police van, the plaintiff was the sole prisoner in said van and was placed on a bench inside said van. Said bench ran from front towards the rear and along the driver's side of said van.

30.     While still at the scene, Defendants took and retained plaintiff's personal effects and property.

31.     At first, Plaintiff was alone in the back of the police van.  After being in the van as it was being driven aggressively tossing Plaintiff about for more than one hour, the police van was used to pursue and capture another person named "Mike."  Mike was then placed in the rear of the van with Plaintiff.  Mike was seated on the bench on the opposite side of the Prisoner Van and was facing the plaintiff.

32.     For reasons only know to the defendants and not by the plaintiff, the Prisoner Van was continuously and roughly/violently driven by SHATKIN and SETTEDUCATO for two hours following Mike's arrest, totaling roughly 3 hours of the plaintiff being handcuffed in the back of said van.

33.     Although the plaintiff could have been directly transported to the 121st Precinct following his arrest, the defendants instead kept the plaintiff in said van for an excessive length of time and without any justification.

34.     There were only two benches in the rear of the van, in the section designated for prisoners.  Those two benches faced each other as did the plaintiff and Mike while they both occupied the prisoner section of the subject van.

35.     Each bench was equipped with only one seatbelt - a waist/lap belt - that ran across the entire length of each bench and would cross the waists of the occupants of said van. There were no shoulder belts or harnesses in said van.

36.     Plaintiff remained in the rear of the van for roughly another two hours, totaling more than three hours of being handcuffed behind his back and driven around roughly in said van.

37.     Other than Mike, no one else was placed in the back of the van with Plaintiff. Plaintiff was not adequately seat-belted or otherwise made secure at any time throughout the three-hour ride in the police van as it was driven aggressively.

38.     As a result of not being adequately seatbelted, secured or safely restrained, Plaintiff was tossed about in the back of the police van for roughly three hours.

39.     While Plaintiff was kept in the back of the police van for roughly three hours, Plaintiff told Defendants that he had to urinate since the prescription medication that he was taking caused frequent urination.  The Defendants SETTEDUCATO and SHATKIN pulled the police van over and instructed Plaintiff to urinate in public on the side of the road.

40.     Plaintiff informed SHATKIN and SETTEDUCATO of his pain and discomfort and his need for medical attention.  The defendants then instructed Plaintiff to lean his head back and open his mouth.  When Plaintiff complied, either Defendant SETTEDUCATO or SHATKIN tossed two pills into Plaintiff's mouth and told him to swallow.  Plaintiff was not given water or anything else to drink with the two pills.  Plaintiff was not provided any medical care or treatment.

41.     The Plaintiff was eventually taken into the 121st Precinct, where he remained in custody.  Plaintiff was then transferred from the 121st to the 120th Precinct.  Plaintiff was told that he would remain in the 120th Precinct overnight.

42.     Plaintiff was kept in a cell overnight at the 120th Precinct.  After being incarcerated overnight, Plaintiff was brought before a criminal court judge the next day on November 13, 2016.  The judge released the plaintiff on his own recognizance.

43.     Due to this incident, Plaintiff was compelled to appear in criminal court on four separate occasions and to retain criminal defense counsel at a cost of $5,000.

44.     Ultimately, the criminal court judge dismissed all the charges asserted against the plaintiff during this incident.

45.     Upon information and belief, the criminal court judge concluded that the arrest was unwarranted and on that basis dismissed the charges against the Plaintiff.

46.     At no time while Plaintiff was incarcerated was he offered any food to eat.

47.     At all times relevant hereto, Plaintiff suffered from the following medical conditions, for which he was required to take prescription medication along with food, all of which he made known to the defendants: heart issues, high blood pressure, anxiety, throat

cancer and a back injury.

48.     Despite Plaintiff requesting permission to take his medication or to receive appropriate medical attention while he was at the 120th Precinct, he was not permitted to take his medications and no medical care or treatment was provided, offered or otherwise made available.

49.     Due to plaintiff's physical condition and medical needs, the plaintiff needed medical attention and the defendants should have transported the plaintiff to a hospital.

50.     While incarcerated at the 120th Precinct, in response to Plaintiff's request for medication or to take Plaintiff to the hospital, Defendants told Plaintiff that if they have to take him to a hospital, he will remain in custody for three or four days while receiving medical care at the hospital.  Defendants, therefore, denied Plaintiff both his medication and any medical treatment.  Plaintiff later again requested medical attention but was wholly ignored.

51.     As a direct result of Plaintiff's mishandling and abuse in the back of the police van and his subsequent neglect and mistreatment as set forth herein, the plaintiff sustained injuries to his head, neck, right shoulder and lower back, as well as psychological and emotional injuries, causing him to seek necessary medical treatment upon his release from custody.

52.     As a direct result of the acts of Defendants herein, Plaintiff's relationship with his daughters was irreparably damaged throughout the four months following this incident while Plaintiff was caused to appear in family court on numerous occasions to oppose an order of protection that his ex-wife sought in response to this arrest of Plaintiff in the presence of his two young daughters.  During those four months, Plaintiff was prohibited from seeing or

having any contact with his two daughters.  He did not get to see them for Christmas. He did not get to see them for New Year's Eve or New Year's day.  He did not get to see them for Valentine's day.  This was all due to this incident.  The four-month order of protection was vacated only after Plaintiff underwent mandated periodic drug testing throughout those four months.  That drug testing was precipitated by the incident complained of herein.  Plaintiff was caused to expend several thousand dollars on a family court attorney to address the issues caused by the incident complained of herein. Plaintiff's relationship with his daughters remains damaged.

53.    The aforementioned acts and omissions of the defendants, acting individually and in concert, constituted violations of the plaintiff's Constitutional rights, a violation of 42 U.S.C. § 1983, were intentionally carried out without Plaintiff's consent and without any objective lawful justification or privilege.

54.    Reasonable police officers would have concluded that there was no reasonable basis to stop and seize the plaintiff or to commit the acts of defendants as alleged herein.

55.    The individual defendants are not entitled to immunity since their conduct violated Plaintiff's Constitutional rights on the basis that a reasonable person would have known that the actions of the individual defendants were not objectively reasonable and would violate Plaintiff's Constitutional rights.

56.    The acts and omissions of each individual defendant were carried out in their official capacities and within the cope of their employment as employees of New York City, specifically the New York City Police Department and for the benefit and furtherance of New York City and the New York City Police Department.

57.     The actions and omissions of each individual defendant were carried out with the permission, ratification, consent, knowledge, at the direction, and for the benefit, of New York City, specifically the New York City Police Department.

58.     On or about February 10, 2017, within ninety (90) days following the accrual of the causes of action alleged herein, a Notice of Claim was duly served by Plaintiff on defendants.

59.     More than thirty (30) days have elapsed since the plaintiff presented his Notice of Claim to the defendants but said defendants have refused or neglected to make adjustment in payment whereof.

60.     As a direct and proximate result of the wrongful acts described above, the Plaintiff has sustained and/or will sustain in the future the following injuries and damages: a) conscious pain and suffering; and b) economic losses, including loss of property, legal expenses and medical expenses.

61.     At all times relevant hereto, the actions of the defendants were outrageous and/or willful and/or malicious so as to entitle the Plaintiff to punitive damages as allowed under 42 U.S.C. § 1983.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## FIRST CLAIM

### VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983 AND BY THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS AGAINST ALL DEFENDANTS BY FAILING TO PROTECT THE PLAINTIFF FROM UNCONSTITUTIONAL HARM FALSE ARREST/FALSE IMPRISONMENT

62.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

63.    At all times relevant hereto, the conduct of all the defendants were subject to the provisions of 42 U.S.C. §§1983 and 1988 as they were acting under the color of state law.

64.    At all time relevant hereto, there existed clearly recognized federal rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution for the plaintiff to be secure from unreasonable searches and seizures, false arrest and false imprisonment, to be provided equal protection of his rights, due process by government actors and to be protected from the deprivation of liberty without due process of law.

65.    The conduct and actions of the defendants, acting jointly and severally under color of state law, in unlawfully stopping, seizing, arresting, assaulting, harassing, and using excessive force against Plaintiff was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to cause and did cause specific and serious bodily, mental and emotional harm, pain and suffering in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

66.     The defendants acted under the color of state law when they abused their positions given to them by the City and State of New York.

67.     Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES, acting individually and in concert, intentionally and deliberately falsely detained, falsely arrested and falsely imprisoned Plaintiff and subjected Plaintiff to an unreasonable, unlawful and unconstitutional search.

68.     Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES intended to confine Plaintiff in the street, in the subject police prisoner van, and at both the 120th and 121st Precincts.

69.     Plaintiff was conscious of the confinement at the above-mentioned places.

70.     Plaintiff did not consent to the confinement in any of the above-mentioned places.

71.     The confinement of the Plaintiff in the above-mentioned places was not otherwise privileged, for example, due to a valid search warrant or the existence of probable cause.

72.     There was no legal justification for the acts and omissions of defendants as complained of herein.

73.     Defendants did not possess information sufficient to support an objectively reasonable belief that an offense had been committed by the plaintiff or that the defendants had probable cause to stop the plaintiff and treat the plaintiff in the manner complained of herein.

74.     As a direct result of the acts and omissions of the defendants, the plaintiff suffered a denial of his federal statutory rights and his Constitutional rights and privileges.

75.     As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## SECOND CLAIM

**VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983
AND BY THE FOURTH AND FOURTEENTH AMENDMENTS OF THE
UNITED STATES CONSTITUTION AS AGAINST ALL DEFENDANTS
BY FAILING TO PROTECT THE PLAINTIFF FROM
UNCONSTITUTIONAL HARM
ABUSE and LACK OF APPROPRIATE CARE**

76.     Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

77.     At all times relevant hereto, there existed a clearly recognized civil right to be free from wrongful and/or illegal acts which would violate the rights guaranteed to the Plaintiff under the constitution and laws of the United States and the State of New York.

78.     The conduct and actions of the defendants, acting jointly and severally under color of state law, failing to take any steps to protect Plaintiff from unjustified and unconstitutional stop, detention, arrest, assault, harassment, excessive force, and deprivation of liberty, was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to cause and did cause unconstitutional harm, specific and serious bodily, mental and emotional harm and pain and suffering in violation of the Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §

1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

79.     Defendants assumed responsibility for the plaintiff's safety and general well-being when the defendants took the plaintiff into custody against his will.

80.     The deprivation of the plaintiff's liberty triggered defendants' duty to plaintiff and the protections of the Due Process clause.

81.     The confinement of the plaintiff throughout the incident complained of herein, specifically including the time Plaintiff was restrained in and confined to the prisoner van, and at the 120th and 121st Precincts, was punishment.

82.     The defendants' conduct was grossly negligent in that the defendants had reason to know of facts creating a high degree of risk of physical harm to the plaintiff and deliberately acted or failed to act in conscious disregard in indifference to that risk.

83.     As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## THIRD CLAIM

### VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983 AND BY THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AGAINST ALL DEFENDANTS BY FAILING TO PROTECT THE PLAINTIFF FROM UNCONSTITUTIONAL HARM UNREASONABLE SEARCH AND SEIZURE – EXCESSIVE FORCE

84.     Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

85.     That at all times relevant hereto, defendants, while in the scope of their employment, servants, agents, police officers and/or representatives of defendants THE CITY, used extraordinary and excessive use of violence and brutality against Plaintiff, causing severe injuries and permanent injury.

86.     Defendants' actions amounted to an unreasonable search and seizure and violated clearly established rights.

87.     The manner in which the defendants treated the plaintiff at all times relevant hereto constituted excessive force.

88.     Defendants' actions shock the conscience.

89.     At all times herein mentioned, defendants negligently, wantonly and intentionally failed to prevent the within incident and/or the excessive use of force and brutality, causing Plaintiff to be assaulted and to endure the aforementioned physical infliction of abuse and neglect.

90.     At all times herein mentioned, defendants, negligently, wantonly and intentionally failed to prevent the within incident and/or the excessive use of force and brutality, causing Plaintiff to be assaulted and endure physical harm, emotional distress, mental anguish and fear due to the aforementioned physical infliction of abuse and neglect by defendants.

91.     The plaintiff was physically abused during the times relevant hereto, specifically throughout the time the plaintiff was unjustifiably restrained in the prisoner van and tossed about for roughly three hours.

92.     No reasonable officer in the position of the defendants would have believed the actions of the defendants herein were objectively reasonable.

93.     Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendants, but failed to do so, thereby proximately causing Plaintiff's injuries.

94.     Each defendant, VACCARINO, AGOSTINO, FARELLA, GOYCO, SETTEDUCATO, SHATKIN and DOES conspired, aided, abetted and acted in concert with the other defendants in the aforementioned wrongful stop, detention, and arrest, excessive use of force and brutality and improper care and treatment of the Plaintiff.

95.     Defendants were aware of the aforementioned civil rights violations and wrongful acts being done against the Plaintiff and had the duty and the opportunity to protect the Plaintiff from the unlawful actions of the other defendants, but failed to do so, thereby proximately causing Plaintiff's injuries.

96.     That by reason of the foregoing, Plaintiff was injured and caused to suffer severe and permanent injuries without any negligence on the part of the Plaintiff contributing thereto.

97.     As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing

thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## FOURTH CLAIM

### VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983 AND BY THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AGAINST DFENDANT CITY MUNICIPAL LIABILITY

98.     Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

99.     At all times material hereto, the Defendant CITY, acting through its Police Department, had in effect de *facto* policies, practices, and customs exhibiting deliberate indifference to the constitutional rights of the citizens, residents and occupants of the City of New York that were a direct and proximate cause of the unconstitutional conduct of Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SETTEDUCATO, SHATKIN and DOES, and of the resultant official condoning and ratification of the wrong and unconstitutional conduct of Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SETTEDUCATO, SHATKIN and DOES.

100.    That at all times relevant hereto, Defendant CITY maintained a policy and widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law that resulted in the violation of plaintiff's constitutional rights.

101.    These de *facto* policies, practices and customs include, *inter alia:* a) the failure to properly screen, supervise, train, discipline, transfer, counsel, and/or otherwise control NYPD employees engaged in falsely stopping, frisking and arresting individuals, using excessive and unjustified force, particularly those police employees who are repeatedly accused of such acts; b)

the failure to properly train and supervise police employees to avoid the use of punitive, cruel and excessive force; and c) authorizing and ratifying the police code of silence wherein police employees regularly cover-up police use of wrongful stops and arrests, improper searches of detainees, their persons and the motor vehicles of detainees and excessive and unjustified force by telling false and incomplete stories, or by failing to report the use of excessive and unjustified force by police officers, *inter alia,* in sworn testimony, official reports and in public statements, all of which are designed to cover for and/or falsely exonerate the accused police officers.

102.    Upon information and belief, the defendant CITY failed to effectively screen, hire, train, supervise and discipline their police officers, including the defendant police officers herein, for their propensity for violence, including excessive and unjustified force and restraint, lack of truthfulness, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers herein to be in a position to assault, excessively and unjustifiably restrain the Plaintiff and to otherwise cause him injury and violate his federal and state constitutional rights, and/or to permit these actions to take place with their knowledge or consent.

103.    As a result of the foregoing conscious policies, practices, customs and/or usages, Defendant CITY has permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent or otherwise constitutionally violative behavior. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the Plaintiff.

104.    At all times herein, Defendant CITY had authority to address alleged behavior that violated citizens' constitutional rights and to institute corrective measures.

105.    At all times herein, Defendant CITY knew or should have known of the harassment *previously* perpetrated by Defendant VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES against Plaintiff and other similarly situated citizens and failed to take calculated steps to end the abuse, choosing instead to remain deliberately indifferent to the offending behavior.

106.    As a direct and proximate result of the Defendants' wrongful acts, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, anxiety and embarrassment.

107.    As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## **FIFTH CLAIM**

### **AGAINST DEFENDANT CITY**
### **NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION**

108.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

109.    At all times relevant here to, Defendant CITY has been grossly negligent and negligent in the hiring, retaining, training, supervising and monitoring of its employees and agents.

110.    At all times relevant hereto, Defendant CITY has been negligent in hiring, retaining, training and supervising its employees and agents regarding the identification, detection, and reporting of police officers and other NYPD employees who commit or are suspected of committing crimes and misconduct or police officers who are witnesses to crimes and misconduct by their fellow officers.

111.    At all times relevant herein, Defendant CITY has been grossly negligent and negligent in the hiring, retaining, training, supervising and monitoring of Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES relating to the conduct complained of herein.

112.    The acts and omissions of the individual defendants were committed within the scope of their employment with the Defendant CITY and, therefore, the Defendant CITY is liable under the theory of Respondeat Superior.

113.    Defendant CITY is liable for the acts and omissions of the individual defendants as they are each employees of Defendant CITY and were each acting within the scope of their employment with and for the benefit of Defendant CITY.

114.    As a direct and proximate result of all of the defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## SIXTH CLAIM

### AS AGAINST ALL DEFENDANTS
### CIVIL ASSAULT

115.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

116.    Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES intentionally committed acts of civil assault against Plaintiff when they intentionally attempted and threatened to inflict injury on the plaintiff.

117.    Based on the facts and circumstances as asserted herein above, and based upon the individual defendants' position as law enforcement officers and the circumstances at the scene of the stop, frisk and arrest of the plaintiff, along with the events that followed thereafter, the individual defendants possessed an apparent ability to cause harm to the plaintiff.

118.    Based on the facts and circumstances as asserted herein above, and based upon the individual defendants' position as law enforcement officers and the circumstances at the scene of the stop, frisk and arrest of the plaintiff, along with the events that followed thereafter, the plaintiff was caused to have a reasonable apprehension of bodily harm and/or offensive contact by the individual defendants as directed toward the plaintiff.

119.    As a direct and proximate result of the defendants' wrongful acts, policies, practices, customs and/ or usages complained of herein, the Plaintiff was placed in fear of imminent physical contact, was scared for his safety, and reasonably felt that wrongful, inappropriate contact was about to occur.

120.    As a direct and proximate result of all of the defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and

damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

<u>**SEVENTH CLAIM**</u>

**AS AGAINST ALL DEFENDANTS**
<u>**CIVIL BATTERY**</u>

121.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

122.    Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES intentionally committed acts of civil battery against Plaintiff when they intentionally had bodily contact with the plaintiff and applied force to the plaintiff during the actions and omissions as described herein-above.

123.    The intentional actions and omissions of the defendants, done in concert with each of their acts and omissions, were harmful to the plaintiff, were carried out in an offensive manner, wrongful under all the circumstances, with the intent to make the contact, and were done without the consent of the plaintiff.

124.    The intentional actions and omissions of the defendants, as directed toward the plaintiff, were intended to cause and did cause the plaintiff to have the imminent apprehension and fear of physical harm.

125.    As a direct and proximate result of the Defendants' intentional wrongful acts, omissions, policies, practices, customs and/ or usages complained of herein, the plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, anxiety and

embarrassment.

126.    As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## EIGHTH CLAIM

### AS AGAINST
### VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN and SETTEDUCATO
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

127.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

128.    Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES, acting individually and in concert, intentionally and deliberately inflicted emotional distress on Plaintiff by improperly and unjustifiably stopping the plaintiff, acting in the manner complained of herein in the presence of the plaintiff's two children, placing the plaintiff under arrest, transporting the plaintiff in the manner and for the length of time complained of herein, depriving the plaintiff of necessary medical treatment, detaining the plaintiff at the 120th and 121st Precincts, and for acting in the manner complained of herein, for maliciously assaulting, battering, harassing, and/or seizing the plaintiff, by conspiring against the plaintiff and/or by interfering with his state and federal civil rights by coercion, or intimidation, and otherwise knew or should have known that emotional distress was the likely result of their conduct.

129.    Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

130.    The actions of the defendants were the cause of Plaintiff's distress and severe physical injuries.

131.    Plaintiff is a reasonable man.

132.    The emotional distress sustained by Plaintiff was severe and of a nature that no reasonable person could be expected to endure.

133.    As a result of the defendants' extreme and outrageous conduct, Plaintiff was, is, and, with a high degree of likelihood will continue to be, emotionally distressed.

134.    As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

### NINTH CLAIM

**AS AGAINST ALL DEFENDANTS**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

135.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

136.    Defendants  CITY,  VACCARINO,  AGOSTINO,  FARELLA,  GOYCO, SHATKIN, SETTEDUCATO and DOES, acting individually and in concert, negligently inflicted

emotional distress on Plaintiff by improperly and unjustifiably stopping the plaintiff, acting in the manner complained of herein in the presence of the plaintiff's two children, placing the plaintiff under arrest, transporting the plaintiff in the manner and for the length complained of herein, depriving the plaintiff of necessary medical treatment, detaining the plaintiff at the 120th and 121st Precincts, and for acting in the manner complained of hereinabove, for maliciously assaulting, battering, harassing, and/or seizing the plaintiff, by conspiring against the plaintiff and/or by interfering with his state and federal civil rights by coercion, or intimidation, and otherwise knew or should have known that emotional distress was the likely result of their conduct.

137.    Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency, utterly intolerable in a civilized community, and unreasonably endangered the plaintiff's physical safety.

138.    Defendants' conduct negligently exposed the plaintiff to dangers of an acute medical condition based upon his past, recent, and then-present medical conditions for which he took prescribed medications and for which the defendants were aware or could have been aware.

139.    The actions of the defendants were the cause of the plaintiff's distress and severe physical injuries.

140.    Plaintiff is a reasonable man.

141.    The emotional distress sustained by Plaintiff was severe and of a nature that no reasonable person could be expected to endure.

142.    As a result of the defendants' extreme and outrageous conduct, Plaintiff was, is, and, with a high degree of likelihood will continue to be, emotionally distressed.

143.   As a direct and proximate result of the defendants' wrongful acts, policies, practices, customs and/ or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, anxiety and embarrassment.

144.   As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## **TENTH CLAIM**

### **AS AGAINST ALL DEFNEDANTS**
### **FALSE ARREST AND FALSE IMPRISONMENT**

145.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

146.   Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES, acting individually and in concert, intentionally and deliberately falsely arrested, falsely stopped, falsely detained, falsely arrested and falsely imprisoned the plaintiff and subjected the plaintiff to an unreasonable, unlawful and unconstitutional search.

147.   Defendants VACCARINO, AGOSTINO, FARELLA, GOYCO, SHATKIN, SETTEDUCATO and DOES intended to confine the plaintiff in the street, in the subject police prisoner van, and at both the 120th and 121st Precincts.

148.   Plaintiff was conscious of the confinement at the above-mentioned places.

149.   Plaintiff did not consent to the confinement in any of the above-mentioned places.

150.    The confinement of the Plaintiff in the above-mentioned places was not otherwise privileged, for example, due to a valid search warrant or the existence of probable cause.

151.    There was no legal justification for the acts and omissions of defendants as complained of herein.

152.    Defendants did not possess information sufficient to support a reasonable belief that an offense had been committed by the plaintiff.

153.    As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

### ELEVENTH CLAIM

### AS AGAINST ALL DEFENDANTS
### MALICIOUS PROSECUTION

154.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

155.    The actions of the defendants acting individually and in concert, intentionally and deliberately led to a malicious prosecution of the plaintiff.

156.    A judicial proceeding was commenced and prosecuted against Plaintiff.

157.    This was done by or at the instance of the defendants.

158.   This was done without probable cause for the stop, the arrest or for the prosecution and the defendants lacked probable cause to believe that the prosecution would succeed.

159.   No new information came to light to provide probable cause for either the arrest or for the prosecution but the defendants proceeded with both.

160.   This was done with actual malice.

161.   The subject judicial proceeding terminated in favor of the plaintiff.

162.   Plaintiff was injured by having to go through this judicial proceeding.

163.   Plaintiff suffered interference with his person or property as a result of this proceeding, including the confiscation of his prescription medication and cellular phone.

164.   As a direct and proximate result of all of the Defendants' wrongful acts, omissions, policies, practices, customs and/or usages complained of herein, the Plaintiff suffered injuries and damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an amount to be determined at a trial of this matter.

## TWELFTH CLAIM

### AS AGAINST ALL DEFENDANTS
### NEGLIGENCE

165.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully set forth herein.

166.   Each defendant owed a duty to the plaintiff not to inflict any harm to the plaintiff throughout the time period set forth herein.

167.   Each defendant had a duty and obligation to treat the plaintiff in a lawful and safe manner and to safely transport the Plaintiff from the location of Plaintiff's arrest to the Police Precinct.

168.   Upon information and belief, at all times relevant hereto, SHATKIN and SETTEDUCATO operated the subject Police Van/motor vehicle that was owned, controlled and managed by Defendant CITY.

169.   That at all times relevant hereto, and upon information and belief, Defendants, SHATKIN and SETTEDUCATO, operated, maintained, managed, and controlled the aforesaid Police Van/motor vehicle with the knowledge, consent, permission, and for the benefit and at the direction and control of Defendant, CITY.

170.   That on the 12th day of November, 2016, while the Plaintiff, LAMBROS VASSILIOU, was in custody of the defendants and a passenger in the Police Van/motor vehicle operated, upon information and belief, by Defendants SHATKIN and SETTEDUCATO and controlled by Defendant CITY, in the County of Richmond, State of New York, defendants SHATKIN and SETTEDUCATO operated the Police Van/motor vehicle in a dangerous and reckless manner, causing serious injuries to the plaintiff herein.

171.   That the negligence of the defendants, SHATKIN and SETTEDUCATO, as the operators of the Police Van/motor vehicle consisted, among other things, of the following:  in driving a motor vehicle at a dangerous and excessive rate of speed; in operating said vehicle without keeping a proper lookout; in failing to observe the road and traffic conditions then and there existing; in failing to keep the motor vehicle under control; in failing to have the motor vehicle equipped with adequate brakes and braking mechanisms; in failing to properly secure the

Plaintiff; in transporting the Plaintiff for an unreasonably long period of time; in failing to apply brakes and in driving recklessly under the circumstances.

172.    That the negligence of the individual defendants consists of, among other things, mistreating the plaintiff; placing the Plaintiff in the subject Police Van/motor vehicle with his hands restrained behind his back in a manner by which the plaintiff was unable to secure or protect himself while being transported in the subject Police Van/motor vehicle; placing the Plaintiff in the Police Van/motor vehicle without him being secured by a seatbelt or any other safety device; and placing the plaintiff in the Police van/motor vehicle in the manner complained of herein despite knowing that the driver of the subject Police Van/motor vehicle would operate said motor vehicle in an aggressive and unsafe manner.

173.    That as a result of the negligence of the individual defendants, the plaintiff, LAMBROS VASSILIOU, has become sick, sore, lame and disabled, has sustained severe and serious injuries, has suffered and will continue to suffer severe mental and nervous shock with accompanying pain, has required medical treatment and was and will be unable to attend to his usual duties for a long period of time; was obliged to and did expend large sums of money for medical care and attention and will be required to expend additional sums of money for medical care in the future to attend to his injuries which he believes to be of a permanent nature.

174.    Plaintiff, LAMBROS VASSILIOU, has sustained a serious injury as defined in subdivision "d" of Section 5102 of the Insurance Law of the State of New York; or economic loss greater than basic economic loss as defined in subdivision "a" of Section 5102 of the Insurance Law.

175.    Through the acts and omissions of the individual defendants, and the defendant CITY by its acts and omissions, the defendants individually and jointly breached their duty

to the plaintiff.

176.   As a direct and proximate cause of the acts and omissions of each and every defendant, the plaintiff sustained significant and serious injuries.

177.   The damages and injuries sustained by the Plaintiff were caused solely by the acts and omissions of the defendants, individually and jointly, without any acts or omissions of the Plaintiff contributing thereto.

178.   The acts and omissions of the individual defendants were carried out while they purported to be acting on behalf, as agents, employees, representatives, and for the benefit, of defendant CITY.

179.   Under the doctrine of Respondeat Superior, defendant CITY, as the employer of the individual defendants, is liable for the negligent acts of the individual defendants committed while the individual defendants were acting in the scope of their employment.

180.   The individual defendants, as employees of defendant CITY, acted within the scope of their employment when they were purportedly acting in furtherance of the duties they owe to defendant CITY, as their employer, since defendant CITY exercised or could have exercised some control, directly or indirectly, over the individual defendants' activities.

181.   As a direct and proximate cause of the wrongful acts, omissions policies, practices, customs and/or usages of the defendants as complained of herein, individually, jointly, in their individual capacities and, as to the defendant CITY, as Respondeat Superior, the plaintiff has sustained damages including, but not limited to, conscious pain and suffering, and anxiety and embarrassment, without any negligence or conduct on the part of the Plaintiff contributing thereto, for which the plaintiff seeks compensatory and punitive damages in an

amount to be determined at a trial of this matter.

## THIRTEENTH CLAIM

### AS AGAINST ALL DEFENDANTS
### NEGLIGENCE

182.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if fully restated herein.

183.    That at all times relevant hereto, and upon information and belief, the defendant CITY was and is the owner or lessee of the Police Van/motor vehicle that transported the Plaintiff from the scene of the subject arrest and that the defendant CITY maintained, managed and controlled the afore-described motor vehicle and the use thereof.

184.    Defendant CITY ratified, condoned, authorized the conduct of the individual Defendants.

185.    The damages and injuries sustained by the plaintiff were caused solely by the acts and omissions of the defendants, individually and jointly, without any acts or omissions of the plaintiff contributing thereto.

186.    That the carelessness, recklessness and negligence of the defendant, CITY, consisted, among other things, of the following: in failing to ensure that the individual defendants acted in a lawful manner and in a manner to prevent the injuries and damages suffered and sustained by the plaintiff; in failing to ensure that the individual defendants did not place people such as the plaintiff in the back of a Police Van/motor vehicle unrestrained and in a manner that did not secure the plaintiff enabling him to be tossed about in the rear of said Police Van/motor vehicle; in failing to ensure the safe operation and control of said vehicle, upon information and belief, operated by defendants, SHATKIN and SETTEDUCATO; in permitting defendants,

SHATKIN and SETTEDUCATO, to operate the afore described Police Van/motor vehicle without supervision and guidance and entrusting said vehicle to Defendants, SHATKIN and SETTEDUCATO, for purposes of operating the same.

187.    Plaintiff, LAMBROS VASSILIOU, has sustained a serious injury as defined in subdivision "d" of Section 5102 of the Insurance Law of the State of New York; or economic loss greater than basic economic loss as defined in subdivision "a" of Section 5102 of the Insurance Law.

188.    That by reason of the aforesaid occurrence and resulting injuries to Plaintiff, LAMBROS VASSILIOU, has been damaged in an amount within the jurisdictional limits of this Court, in an amount to be determined at a trial of this matter.

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against the defendants on each claim asserted herein:

a.    Compensatory damages;

b.    Punitive damages;

c.    The convening and empanelling of a jury to consider the merits of the claims herein;

d.    Damages relating to the negligence claims and personal injury, including but not limited to Plaintiff's pain and suffering;

e.    Costs, interest and attorneys' fees; and

f.    Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

DATED: Westbury, New York
      June 20, 2019

                        LAW OFFICES OF HARRY C. DEMIRIS, JR., P.C.

                        By:
                                 Harry C. Demiris, Jr.
                        Attorneys for Plaintiff
                        400 Post Avenue, Suite 200
                        Westbury, New York 11590
                        Telephone:(516)997-9354
                        Facsimile: (516)997-9393
                        Email: hdemiris@demirislaw.com