18 CV 779 (EK) (VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAMBROS VASSILIOU,

Plaintiff,

- against -

THE CITY OF NEW YORK, POLICE DETECTIVE
PHILIP VACCARINO, POLICE DETECTIVE
VINCENT AGOSTINO, SERGEANT PAUL FARELLA,
DETECTIVE JELSON GOYCO, POLICE OFFICER
LEONID SHATKIN, POLICE OFFICER VINCENT
SETTEDUCATO, individually and in their respective
capacities as members of the City of New York Police
Department, and POLICE OFFICERS JOHN DOES
NUMBERED 1-6, Unknown and intended to be other
New York City Police Officers Involved in the
Occurrence Herein, Individually and in their respective
capacities as members of the City of New York Police
Department,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTIONS *IN LIMINE***

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Alan Howard Scheiner*
*Tel:  (212) 356-2344*
*Matter No. 2018-009699*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ IV

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT

    POINT I

        PLAINTIFF SHOULD BE PRECLUDED FROM
        TESTIFYING ABOUT HIS ALLEGED MEDICAL
        DIAGNOSES OR THE CAUSE OF ANY ALLEGED
        MEDICAL INJURIES .................................................................................. 3

    POINT II

        IN THE ABSENCE OF ADMISSIBLE EVIDENCE
        THAT PLAINTIFF'S MEDICAL CONDITIONS
        WERE CAUSED BY DEFENDANTS'
        NEGLIGENCE, ALL EVIDENCE OF PLAINTIFF'S
        SUBSEQUENT MEDICAL TREATEMENT
        SHOULD BE EXCLUDED .......................................................................... 8

    POINT III

        BECAUSE PLAINTIFF MADE INADEQUATE
        DISCLOSURES REGARDING HIS
        CALCULATIONS OF ECoNOMIC DAMAGES,
        EVIDENCE OF SUCH DAMAGES SHOULD BE
        PRECLUDED ............................................................................................. 9

    POINT IV

        THE COURT SHOULD PRECLUDE ANY
        MEDICAL DOCUMENTS FROM BEING
        INTRODUCED INTO EVIDENCE IN THE
        ABSENCE OF A WITNESS COMPETENT TO
        EXPLAIN THE RECORDS ........................................................................ 12

**Page**

POINT V

    THE COURT SHOULD BIFURCATE TRIAL BETWEEN THE ISSUES OF LIABILITY AND MEDICAL DAMAGES, INCLUDING CAUSATION OF MEDICAL DAMAGES ....................................................................... 13

POINT VI

    PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE RELATED TO CLAIMS THAT HAVE BEEN DISMISSED AND THE JURY SHOULD BE INSTRUCTED THAT THE ARREST AND PROSECUTION OF PLAINTIFF WERE LAWFUL........................................................................................ 18

POINT VII

    PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO DEFENSE COUNSEL AS CITY ATTORNEYS, AND from REFERRING TO CITY INDEMNIFICATION OF THE INDIVIDUAL DEFENDANTS ........................................................................................ 20

POINT VIII

    PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING OR MENTIONING A SPECIFIC DOLLAR AMOUNT OF DAMAGES FROM THE JURY................................................................................................................ 22

POINT IX

    PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF THE OFFICERS' DISCIPLINARY HISTORIES AND PRIOR LAWSUITS ............................................................................................... 23

POINT X

    PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING ALLEGATIONS OF MISCONDUCT AGAINST OTHER POLICE OFFICIALS, EVENTS IN THE NEWS, OR USING INFLAMMATORY TERMS TO DESCRIBE POLICE ACTIVITY.................................................................................. 24

**Page**

POINT XI

      DEFENNDANTS RESERVE THE RIGHT TO
      MAKE ADDITIONAL OBJECTIONS AS
      NECESSARY AT TRIAL ......................................................................... 25

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                      <u>**Pages**</u>

Agence France Presse v. Morel,
   293 F.R.D. 682 (S.D.N.Y. 2013) ...........................................................................10

Amato v. City of Saratoga Springs,
   170 F.3d 311 (2d Cir. N.Y. 1999).............................................................. 13-14, 16

Barnes v. Anderson,
   202 F.3d 150 (2d Cir. 1999).....................................................................................5

Carson v. City of Syracuse,
   92-CV-777, 1993 U.S. Dist. LEXIS 9508 (N.D.N.Y June 30, 1993)......................................14

Collado v. City of New York, et al.,
   slip op. (DC) (S.D.N.Y. July 20, 2018) (annexed as Ex. L) ....................................21

Consorti v. Armstrong World Industries, Inc.,
   72 F.3d 1003 (2d Cir. 1995)....................................................................................22

Design Strategy, Inc. v. Davis,
   469 F.3d 284 (2nd Cir. 2006).................................................................................11

Eng v. Blood,
   04-CV-1146 (NAM)(GHL), 2008 U.S. Dist. LEXIS 54802
   (N.D.N.Y. July17, 2008)........................................................................................18

Gierlinger v. Gleason,
   160 F.3d 858 (2d Cir. 1998)....................................................................................4

Harris v. City of New York, et al.,
   15 CV 6341 (NG), Transcript from January 16, 2019,
   pp. 11-12 (annexed as Ex. M)................................................................................21

Hernandez v. Kelly,
   No. 09-CV-1576 (TLM) (LB), 2011 U.S. Dist. LEXIS 57114
   (E.D.N.Y. May 27, 2011) ......................................................................................21

Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.,
   2010 U.S. Dist. LEXIS 127869 (S.D.N.Y. Dec. 2, 2010) ......................................10

Huddleston v. United States,
   485 U.S. 681 (1988)...............................................................................................23

**Cases**                                                                                          **Pages**

Estate of Jaquez v. Flores,
    No. 10 Civ. 2881 (KBF), 2016 U.S. Dist. LEXIS 42579
    (S.D.N.Y. Mar. 30, 2016) ....................................................................................3, 4

Jean-Laurent v. Hennessy,
    840 F. Supp. 2d 529 (E.D.N.Y. Oct. 24, 2011)..............................................19, 21

Jean-Laurent v. Wilkinson,
    No. 05 Civ. 0583 (VM), 2009 U.S. Dist. LEXIS 20472
    (S.D.N.Y. Mar. 13, 2009) ........................................................................................22

Katsaros v. Cody,
    744 F.2d 270 (2d Cir. 1984)..............................................................................14, 16

Lombardo v. Stone, et al.,
    99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267
    (S.D.N.Y. 2002) ........................................................................................................23

Mathie v. Fries,
    121 F.3d 808 (2d Cir. 1997)....................................................................................21

Middle Mkt. Fin. Corp. v. D'Orazio,
    96-CV-8138 (SWK)(HBP), 2002 U.S. Dist. LEXIS 17817
    (S.D.N.Y. Sept. 23, 2002) .................................................................................. 11-12

Mikulec v. Town of Cheektowaga,
    302 F.R.D. 25 (W.D.N.Y. 2014)......................................................................10, 12

Mileski v. Long Island R.R. Co.,
    499 F.2d 1169 (2d Cir. 1974)..................................................................................22

Mineo v. City of New York,
    09 CV 2261, 2013 U.S. Dist. LEXIS 46953
    (E.D.N.Y. Mar. 29, 2013) ..................................................................................14, 15

Morris v. New York State Dept. of Corr. Servs.,
    04 Civ. 17 (HBS), 2010 U.S. Dist. LEXIS
    27262 (W.D.N.Y. Mar. 23, 2010).........................................................................3, 4

Raffles Tree Apparel PTE. Ltd. v. A Base IX Co. LLC,
    No. 18-cv-05791(JSR), 2019 U.S. Dist.
    LEXIS 46244 (S.D.N.Y. Mar. 1, 2019) .................................................................10

Ricciuti v. New York City Transit Auth.,
    796 F. Supp. 84 (S.D.N.Y. 1992) ...........................................................................14

**Cases**                                                                                    **Pages**

Ridge v. Davis, 18 Civ. 8958 (JLM),
    2022 U.S. Dist. LEXIS 202603 (S.D.N.Y. Nov. 7, 2022)......................................19

Sir Speedy, Inc. v. L & P Graphics, Inc.,
    957 F.2d 1033 (2d Cir. 1992)....................................................................................9

Soto v. City of New York, et al.,
    13 CV 8474 (KBF), Order dated December 1, 2017,
    pp. 3-4 (annexed as Ex. N)......................................................................................21

Spotnana, Inc. v. Am. Talent Agency, Inc.,
    09 Civ. 3698 (LAP), 2010 U.S. Dist. LEXIS 86457 (S.D.N.Y. 2010)....................12

Tse v. UBS Fin. Servs., Incl,
    568 F. Supp. 2d 274 (S.D.N.Y. 2008).................................................................9, 10

U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.,
    12-CV-6811 (CM), 13-CV-1580 (CM),
    2013 U.S. Dist. LEXIS 143398 (S.D.N.Y. Oct. 3, 2013).......................................10

Ventura v. Sullivan,
    01 Civ. 434S, 2009 U.S. Dist. LEXIS 4137 (W.D.N.Y. Jan. 21, 2009)...................4

Vogelfang v. Riverhead County Jail,
    04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064
    (E.D.N.Y. Apr. 19, 2012)..........................................................................................3

Wilhelm v. State Traffic Safety Com.,
    230 Md. 91, 185 A.2d 715 (1962) ...........................................................................4

Wills v. Amerada Hess Corp.,
    379 F.3d 32 (2d Cir. 2004)....................................................................................4, 5

Woolfolk v. Baldofsky,
    19-CV-3815 (WFK) (ST), 2022 U.S. Dist. LEXIS 120838
    (E.D.N.Y. July 8, 2022) ..........................................................................................19

**Statutes**

Fed. R. Civ. P. 1 .........................................................................................................14

Fed. R. Civ. P. 26(a) ...................................................................................................11

**Statutes**                                                               **Pages**

Fed. R. Civ. P. 26(a)(1)..........................................................................10

Fed. R. Civ. P. 26(a)(1)(A)(iii)............................................................10, 11

Fed. R. Civ. P. 34..................................................................................10

Fed. R. Civ. P. 42(b)..........................................................................13, 18

Fed. R. Civ. P. 902(11)...........................................................................12

Fed. R. Evid. 401....................................................................................18

Fed. R. Evid. 402..................................................................9, 18, 21, 24

Fed. R. Evid. 403......................................................9, 16, 18, 21, 23, 24

Fed. R. Evid. 404(b)...............................................................................23

Fed. R. Evid. 701.....................................................................................4

Fed. R. Evid. 701(a).................................................................................4

Fed. R. Evid. 701(c).................................................................................4

Fed. R. Evid. 702.....................................................................................4

Fed. R. Evid. 801.....................................................................................4

Fed. R. Evid. 801(c)...............................................................................24

N.Y. Public Health Law. § 3345................................................................1

## PRELIMINARY STATEMENT

On November 12 2016, police officers stopped plaintiff while he was driving a unique custom vehicle that the police believed was not properly registered.  Following the stop, plaintiff was arrested and charged for illegal possession of prescription drugs that were not stored in their original container, as required by N.Y. Public Health Law. § 3345.  Plaintiff brings claims for a wrongful traffic stop pursuant to the Fourth Amendment, and for negligence in his transport by prisoner van from the scene of the stop to the police precinct where he was processed for his arrest.[1] Plaintiff's claim for negligence rests on a "rough ride" theory, alleging that the officers failed to seat-belt him securely and drove recklessly for an extended period, causing him to fall about the prisoner area of the van.  He asserts that not only did he feel pain during the rough ride, but that it caused a severe, progressive and debilitating cervical spine injury that now leaves him incapacitated and in need of full-time care for the remainder of his life.  Further details of the parties' factual contentions are set forth in their revised, proposed Joint Pre-Trial Order ("JPTO") (ECF No. 95) and in the prior briefing on summary judgment.

If this case is tried only on the relevant, admissible evidence then the trial will be short and straightforward, with the only witnesses being the individual defendants and the plaintiff. However, plaintiff's goal of a multi-million dollar damages award depends upon expanding the scope of trial far beyond the admissible evidence.  The vast majority of plaintiff's witnesses and the bulk of pages of his exhibits relate to his claim for medical injuries, which involve five surgeries spanning the period from June 11, 2018 to July 6, 2022, and related symptoms and

---

[1] Plaintiff's claims for false arrest, malicious prosecution, excessive force, and all other claims were dismissed with prejudice on summary judgment.  See Memorandum and Order of January 7, 2021 (ECF No. 62).  As set forth within, evidence relating solely to liability and damages on such claims should be inadmissible.

sequelae of these treatments, as reflected in the medical records of numerous providers.  But none of plaintiff's proffered evidence of diagnosis and treatment for a cervical spine condition (or any other medical condition) is relevant to the case, because, for the reasons set forth within, and in defendants' Memorandum of Law in Support of Their Motion to Preclude Plaintiff's Expert Anne Marie Stilwell, M.D. (the "Daubert Motion"), plaintiff offers no admissible evidence that his medical problems were caused by the events in the prisoner van.  Plaintiff's diagnosis for a cervical spine condition following the incident did not occur until July 5, 2017, nearly eight months after the relevant events.  Moreover, he had experienced recent, pre-existing back pain documented by his own expert witness, and in November 2008 he was previously diagnosed with cervical spine conditions very similar to, and in the same locations as, what was found on July 5, 2017.

For reasons stated in defendants' Daubert Motion, the testimony of plaintiff's proffered causation expert is inadmissible.  Also, as set forth herein, plaintiff himself is not permitted to testify about the medical causation of such complex conditions.  Therefore plaintiff can offer no admissible evidence to tie his years of illness and treatment to defendant's conduct on a single day. Moreover, admission of the evidence of medical damage absent prior proof of causation would be highly prejudicial to defendants, because it is likely to induce sympathy and an assumption by the jury that all of that evidence –which dwarfs the rest of the case – must be important.

If the Court declines to exclude the plaintiff's irrelevant medical evidence, defendants respectfully move for a bifurcated trial.  It would serve the interests of judicial economy, efficiency and fairness for the Court to bifurcate the trial into a liability phase and a damages phase.  In that bifurcated trial, the jury would determine in a liability phase of no more than two days whether or not the defendants had engaged in wrongdoing.  Only if they found in favor of plaintiff on his negligence claim would a jury then hear the prejudicial and time-consuming evidence about

plaintiff's years of medical problems, which would require an additional five days.  The damages trial could be heard by the same jury, in which they would determine if plaintiff's medical problems were in fact caused by defendants' negligence, and if so what damages to award.  This would avoid imposing substantial time and expense on the Court, the jury, the parties and witnesses that may prove unnecessary should the jury find for defendants on the negligence issue.

The bases for these and defendants' other motions *in limine* are set forth below.

## ARGUMENT

### POINT I

### PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING ABOUT HIS ALLEGED MEDICAL DIAGNOSES OR THE CAUSE OF ANY ALLEGED MEDICAL INJURIES

Plaintiff should be precluded from testifying as to any medical diagnosis of his medical conditions, or any hypotheses about the causation of those conditions.  Pursuant to Second Circuit precedent, "expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person."  Estate of Jaquez v. Flores, No. 10 Civ. 2881 (KBF), 2016 U.S. Dist. LEXIS 42579, at *7 (S.D.N.Y. Mar. 30, 2016) (quotations omitted); see also Vogelfang v. Riverhead County Jail, 04-CV-1727 (SJF) (AKT), 2012 U.S. Dist. LEXIS 58064, at *21-22 (E.D.N.Y. Apr. 19, 2012) ("Plaintiff was not permitted to testify as a layperson regarding the diagnosis or prognosis of her injuries, issues on which she was not competent to testify."); Morris v. New York State Dept. of Corr. Servs., 04 Civ. 17 (HBS), 2010 U.S. Dist. LEXIS 27262, at *4 (W.D.N.Y. Mar. 23, 2010) (precluding plaintiff from testifying as to his medical diagnosis).

"For simple and familiar injuries, expert opinion is not necessarily required." <u>Jaquez</u>, 2016 U.S. Dist. LEXIS 42579, at *8.  "Where, however, the nexus between the injury and the alleged cause would not be obvious to the lay juror, expert evidence is often required to establish the causal connection between the [incident] and some item of physical or mental injury." *Id.*; <u>accord Wills v. Amerada Hess Corp.</u>, 379 F.3d 32, 46 (2d Cir. 2004) (quotations omitted).  "To allow a jury of laymen, unskilled in medical science, to attempt to answer such a question [as medical causation] would permit the rankest kind of guesswork, speculation and conjecture." <u>Wilhelm v. State Traffic Safety Com.</u>, 230 Md. 91, 101, 185 A.2d 715, 719 (1962).

Rule 701 explicitly bars the admission of lay opinions that are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Indeed, testimony admitted under Fed. R. Evid. 701 must be "rationally based on the perception of the witness." Fed. R. Evid. 701(a).  Further, under Fed. R. Evid. 801, a physician's statements regarding plaintiff's diagnoses, if they are repeated by plaintiff, are hearsay, and do not fall under any hearsay exception.

In order to prove his negligence claim, plaintiff must establish, among other elements, that the defendants' conduct was the proximate cause of the injuries alleged.  <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 872 (2d Cir. 1998).  However, plaintiff cannot "testify as to the fact that any medical conditions he claims he now suffers were "caused" by the acts of the defendants . . . ." <u>Morris</u>, 2010 U.S. Dist. LEXIS 27262, at *4-5; <u>Ventura v. Sullivan</u>, 01 Civ. 434S, 2009 U.S. Dist. LEXIS 4137, at *1-4 (W.D.N.Y. Jan. 21, 2009) (precluding plaintiff from testifying as to medical causation of his injuries in the absence of expert testimony).

As a general rule:

> [E]xpert medical opinion evidence is usually required to show the
> cause of an injury or disease because the medical effect on the

4

> human system of the infliction of injuries is generally not within the
> sphere of the common knowledge of the lay person.

Barnes v. Anderson, 202 F.3d 150, 159 (2d Cir. 1999) (internal citations omitted).   This is

particularly the case when the injuries alleged to have been suffered are complex.   Id. at 160.

Moreover, in cases, such as the instant matter, where the injuries alleged have "multiple

etiologies," expert testimony is required to establish causation.   Wills v. Amerada Hess Corp., 379

F.3d 32, 33 (2d Cir. 1994) (internal citations omitted).

In Barnes v. Anderson, the Second Circuit evaluated whether expert testimony was

required to prove causation where a plaintiff claimed that she suffered a miscarriage due to

defendants' conduct.   Barnes, 202 F.3d at 157-61.   The Second Circuit found that a miscarriage

was precisely the type of complex injury for which expert testimony was required due to several

factors, including the "unclear nature of the physical contact [the plaintiff] suffered" and the fact

that plaintiff had been subjected to other assaults that could have caused the physical condition.

Id. at 160.   The Second Circuit concluded that "we do not see how a jury could rationally decide

causation in this instance without the aid of expert testimony."   Id.

The instant case is analogous to Barnes.   Plaintiff alleges that, due to the conduct of the

defendants, he suffered "serious injuries to his cervical spine."   JPTO at 6 of 22.   Plaintiff is entirely

unqualified to attribute any cervical spine condition to the incident, and in fact his opinion is

undercut by the actual medical evidence.[2]   Plaintiff's proffered causation expert, who was also his

treating physician, would testify that four days after the incident he appeared for treatment for

---

[2] As set forth in defendants' Daubert Motion, plaintiff's proffered medical expert testimony on causation is
also inadmissible because his witness is medically unqualified to give the testimony, gives no reasons for
her opinions, and the opinions fail to address (or even acknowledge) inconsistent facts in the medical record.

shoulder and wrist pain, which was later found to be attributable to a cervical spine injury.  See Plaintiff's Expert Report of Anne Marie Stilwell, M.D., Ex. B, at 3.[3]

But records from plaintiff's first medical treatment after the incident, on November 16 and 17, 2016, are inconsistent with plaintiff's hypothesis (and that of his expert).  An evaluation of plaintiff by Healthcare Associates in Medicine ("Healthcare Associates"), dated November 17, 2016, does not refer to any complaint of lower back pain.  Rather, plaintiff complains only of pain to his shoulder and wrist (which plaintiff attributed to the incident in this case).  The record states:

> X-RAY: X-rays were taken today of the right shoulder and right wrist. It does show degenerative changes along the CMC joint of the right thumb with some minimal degenerative changes in the wrist. In regard to the right shoulder, it appears to be a questionable bulging of the greater tuberosity on the AP view of the shoulder. No other evidence of acute fracture or dislocation.
> IMPRESSION: At this time, right shoulder injury possibly a rotator cuff tear and right wrist sprain.

Healthcare Associates, Ex. H, DEF 401.  Indeed, in the period following the incident there is no evidence of a diagnosis of a spinal condition until July 5, 2017, approximately *seven months after* the incident.  See Expert Report of Dr. Stilwell, at 3; Radiology Report, Ex. F, DEF1536-1537,

In addition, the medical records show that plaintiff had a prior history of a cervical condition.  In  identical entries on May 12, 2016 and October 10, 2016, plaintiff's purported expert noted that plaintiff presents with "left mid-lower back pain radiating to the lower back" described as a "new pain in the lower back," which plaintiff attributed to a "loud pop" he heard while bending down on April 30, 2016.  Medical Records from Anne Marie Stilwell, M.D. ("Stilwell Records"), Ex. D.., DEF 1608-1623.  This same record appears to be duplicated again, in an entry dated November 16, 2016, four days *after* the incident, which still does not mention the police van.  See

---

[3] For brevity, exhibits to the Declaration of Alan Scheiner in Support of Defendants Pre-Trial Motions are abbreviated as "Ex. __".

Id., DEF 1608-1610.  Nearly identical entries through September 14, 2008, all fail to mention the incident in the police van, but instead note the April 30, 2016 "pop."  Id., DEF 1454-1498.

The Healthcare Associates medical records state that on May 11, 2016, *six months prior to the incident in this case*, "[t]his patient comes in today for an evaluation of his lower back pain radiating down the left leg and right knee pain."  Healthcare Associates, Ex. G.  The record also notes a possible prior cause of his lower back pain, and a diagnosis of a spinal condition:

> The patient denies any recent injury or trauma.  He does state that he was in a motor vehicle accident many years ago.  He usually gets most of his back pain to that.  [sic] He has had MRIs in the past which showed lumbar disc bulging and is in the chart.

Id.

Indeed, the Healthcare Associates records show evidence of cervical and lumbar spinal conditions in November 2008, six years prior to the events in this case: "MRI of the cervical spine from 11/21/08 did reveal some straightening and a C5-6 bulge but it is a suboptimal study. MRI of the lumbar spine from 11/21/08 showed bulging 3-4 and 4-5 disc and what appears to be a Grade I spondylolisthesis at L5-S1."  Ex. C, at 20.  Plaintiff's treatment records of October 13, 2008, show that he claimed pain to his cervical and lumbar spine, which he attributed to two separate occasions when he was a pedestrian struck by a car.  See Ex. E at 2.

The results of the MRI in November 2008 overlap in several respects with the results in July 5, 2017, the first diagnosis of a spinal condition after the events here, found nearly eight months after the incident.  See Stilwell Report, at 3; Ex. F;  Ex. C.  Specifically, both studies found deformations at C3-4, C4-5 and C5-6 in the spine, suggesting that at least some of plaintiff's spinal conditions pre-existed the events in this case by *eight years*.

As an initial matter, even if the medical records were not rife with evidence contradicting plaintiff's causation theory, orthopedic and spinal conditions are complex injuries for which expert

testimony is required on causation.  No layperson could reasonably infer that that whatever plaintiff claims he experienced in the van would have caused any orthopedic condition later diagnosed by a physician.

Here, the issue is especially unsuited to a lay testimony because of the separation in time between plaintiff's various medical treatment and diagnoses (ranging from four days to many months and even years) and the incident itself.  The first injury complained of – shoulder pain and a possible rotator cuff and hand injury– was not diagnosed until four days after the incident.  The first diagnosis of a spinal condition was not made until eight months later, and  there is substantial evidence of a pre-existing injury in the same area that would complicate the causation question even for a medical professional.

As such, whether any of plaintiff's purported medical conditions – and especially his spinal conditions – were proximately caused by the alleged "rough ride" is not an issue that plaintiff is qualified to testify about.  Nor could the jury, as lay people, decide the issue of causation without expert testimony by a qualified medical professional.  Accordingly, plaintiff should be barred from testifying at trial regarding causation.  Indeed, as further explained in defendants Daubert Motion and Point II, *infra*, plaintiff should be barred from testifying about or introducing evidence concerning the alleged injuries from his medical conditions and treatment.

### POINT II

**IN THE ABSENCE OF ADMISSIBLE EVIDENCE THAT PLAINTIFF'S MEDICAL CONDITIONS WERE CAUSED BY DEFENDANTS' NEGLIGENCE, ALL EVIDENCE OF PLAINTIFF'S SUBSEQUENT MEDICAL TREATEMENT SHOULD BE EXCLUDED**

As set forth above in Point I, *supra*, plaintiff may not testify about medical causation, and as set forth defendants' Daubert Motion neither may his proffered expert.  Accordingly, plaintiff

lacks any admissible evidence that his medical issues following the event – and especially the cervical spine issues on which his massive damages claim depends – was proximately caused by defendants' alleged negligence.  (Plaintiff has never identified any other source of an opinion on causation.)  In the absence of such evidence, all of plaintiff's medical evidence, including medical records and medical testimony, is irrelevant, highly prejudicial and confusing.  It is therefore inadmissible under Fed. R. Evid. 402 and 403.

### POINT III

**BECAUSE PLAINTIFF MADE INADEQUATE DISCLOSURES REGARDING HIS CALCULATIONS OF ECONOMIC DAMAGES, EVIDENCE OF SUCH DAMAGES SHOULD BE PRECLUDED**

]As a preliminary matter, economic damages may not be speculative or conjectural.  "[I]t is plaintiff's burden to present a non-speculative basis for determining economic damages." Tse v. UBS Fin. Servs., Incl, 568 F. Supp. 2d 274, 308 (S.D.N.Y. 2008); see also id. at 308 ("The basic rule is that loss of earnings must be established with reasonable certainty . . . .") (citation and internal quotations omitted).  "In order to recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages.... [T]he [factfinder] is not allowed to base its award on speculation or guesswork." Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038 (2d Cir. 1992).

Plaintiff relies on proffered expert testimony by Dr. Michael M. Pappas, who is purported to have created a "Life Care Plan" showing that the future economic cost of plaintiff's medical care and personal care services, required due to his alleged spinal condition, is approximately $7 million. But plaintiff's disclosures discovery are insufficient to allow defendants a meaningful opportunity evaluate or impeach these estimated economic damages.

9

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based . . ."  Plaintiff failed to comply with this requirement for his claim for future economic damages.

"[C]ourts examining this issue have held that Rule 26(a)(1)(A)(iii) requires more than merely setting forth the figure demanded." Mikulec v. Town of Cheektowaga, 302 F.R.D. 25, 29 (W.D.N.Y. 2014) (citation and internal quotations omitted).  "Rule 26(a)(1) contemplates an estimate of damages and 'some analysis.'" U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co., 12-CV-6811 (CM) (JCF), 13-CV-1580 (CM) (JCF), 2013 U.S. Dist. LEXIS 143398, at *17 (S.D.N.Y. Oct. 3, 2013) (citation omitted).

Plaintiff bears the burden to present a non-speculative basis for determining economic damages.  *Tse v. UBS Fin. Servs., Incl*, 568 F. Supp. 2d 274, 308 (S.D.N.Y. 2008) (granting defendant's post-verdict motion for a remitter of damages or a new trial on the grounds that plaintiff's evidence of economic damages in the form of a chart of lost wages based on her own opinions was too speculative); see also Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 2010 U.S. Dist. LEXIS 127869 (S.D.N.Y. Dec. 2, 2010) (dismissing plaintiff's lost profits claim because it was based solely on business owner's speculative testimony); See also Agence France Presse v. Morel, 293 F.R.D. 682, 687 (S.D.N.Y. 2013) (precluding new damages theory at trial not previously disclosed in computation); Raffles Tree Apparel PTE. Ltd. v. A Base IX Co. LLC, No. 18-cv-05791(JSR), 2019 U.S. Dist. LEXIS 46244, at *5 (S.D.N.Y. Mar. 1, 2019) (same).

As his disclosure, plaintiff identified Dr. Pappas as an expert, provided an expert report, and produced a chart called a "Life Care Plan" See Plaintiff's Expert Disclosure for Dr. Pappas, Expert Report and Life Care Plan, Ex. K.  The disclosure is insufficient in several respects.

First, Dr. Pappas' report contains the results of his examination of plaintiff and review of his medical records, and describes the plaintiff's current medical condition.  But it says little about how the costs identified in the Life Care Plan, which purports to calculate plaintiff's damages, were determined.  See Expert Report at 8, Ex. K.  The Report does not provide the sources for cost estimates, or explain how those sources listed in abbreviated fashion in the Life Care Plan were chosen.  Nor does plaintiff provide the method he used, if any, to calculate the present value of the future costs that he estimates.

Second, plaintiff has not produced or made available any documents on which Dr. Pappas relied in providing the Life Care Plan, other than medical records.  This directly contravenes the requirements of 26(a)(1)(A)(iii).  Medical records are insufficient to support calculations of economic loss, especially when the expert purports to estimate future costs discounted to expected value.  The Life Care Plan refers to numerous extraneous sources for estimated costs, none of which were provided to defendants, even by citation or internet link.  See Life Care Plan, Ex. K.

In determining whether a party's failure to disclose a damages calculation in a timely fashion merits sanctions, the court must consider: (1) the offending party's explanation for its failure to comply with its disclosure and discovery obligations, (2) the importance of the precluded evidence, (3) the prejudice suffered by the opposing party as a result of the misconduct, and (4) the possibility of a continuance of trial.  Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2nd Cir. 2006) (affirming trial court's preclusion of lost profits claim).  "The 'automatic sanction' for a violation of Rule 26(a) is preclusion."  Middle Mkt. Fin. Corp. v. D'Orazio, 96-CV-8138

(SWK)(HBP), 2002 U.S. Dist. LEXIS 17817 at *12 (S.D.N.Y. Sept. 23, 2002).  "The non-disclosing party bears the burden of demonstrating that its non-disclosure was substantially justified or harmless."  <u>Mikulec v. Town of Cheektowaga</u>, 302 F.R.D. 25, 29 (W.D.N.Y. 2014); <u>see</u> <u>Spotnana, Inc. v. Am. Talent Agency, Inc.</u>, 09 Civ. 3698 (LAP), 2010 U.S. Dist. LEXIS 86457, at **4–5 (S.D.N.Y. 2010) (precluding introduction of damages of which a computation was not provided until after close of discovery and without explanation).

Here, the prejudice from the non-disclosure is severe, in light of the enormous purported value of plaintiff's future economic damages.  Plaintiff's failure to comply with federal disclosure rules has caused significant prejudice to defendants, who have been deprived of any information with which to cross-examine plaintiff's witness, who is offered to prove a purported $7 million in future economic damages.

Accordingly, the Court should preclude the plaintiff from offering any testimony by Dr. Pappas or other evidence of future economic losses.

### POINT IV

**THE COURT SHOULD PRECLUDE ANY MEDICAL DOCUMENTS FROM BEING INTRODUCED INTO EVIDENCE IN THE ABSENCE OF A WITNESS COMPETENT TO <u>EXPLAIN THE RECORDS</u>**

To the extent the Court deems medical evidence relevant, defendants do not object to plaintiff using relevant *portions* of these records so long as they come from medical records that have been duly certified as authentic and are complete medical records pursuant to Fed. R. Civ. P. 902(11); do not contain inadmissible hearsay or irrelevant matter; and are sufficiently explained by a competent witness that they would be intelligible, meaningful and not confusing to a layperson.  Neither lawyers nor jurors are qualified to explain or interpret medical records for their medical content.  Laypeople do not know the meaning of medical terms, and may not know that a

specific term which does have a generic general meaning in common parlance is being used instead in a technical medical sense.   In other words, non-medical readers may read medical records incorrectly, and not even know that they do not understand the language in the records.   Nor would a layperson know if a record has a typographical error other mistake that would be obvious to a medical professional, or missing information that a medical professional would expect to be included, but is absent.   Some records may be unintelligible and ambiguous without the medical professional who is the author of the document.

Therefore, defendants object to offering medical records into evidence wholesale, to be read to the jury by an attorney or perused by the jury without guidance from a competent medical witness who is subject to cross-examination.   Plaintiff's JPTO does not make clear which portions of the listed records plaintiff intends to use with which witness, and therefore defendants reserve specific objections to portions of the medical records until trial.[4]

### POINT V

### THE COURT SHOULD BIFURCATE TRIAL BETWEEN THE ISSUES OF LIABILITY AND MEDICAL DAMAGES, INCLUDING CAUSATION OF MEDICAL DAMAGES

Plaintiffs' liability and damages claims should be bifurcated for the purposes of trial to avoid prejudice to defendants, for convenience and to promote efficiency to the benefit of the Court and the parties.   Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, a court may order a separate trial "[f]or convenience, to avoid prejudice, or to expedite and economize."   Fed. R. Civ. P. 42(b).   The Court has broad discretion to order bifurcation to promote convenience, avoid prejudice to defendants, or to promote efficiency.   Amato v. City of Saratoga Springs, 170 F.3d

---

[4] Defendants reserve the right to use any statements by plaintiff recorded in the medical records for the purposes of impeach and cross-examination of plaintiff, even if the material is precluded from being offered by plaintiff.

311, 316 (2d Cir. N.Y. 1999); see also Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); see also Fed. R. Civ. P. 1.  However, "these factors do not represent a rigid test for determining whether separate trials are necessary; to the contrary, the court could order bifurcation upon a showing of merely one of these factors."  Carson v. City of Syracuse, 92-CV-777, 1993 U.S. Dist. LEXIS 9508, at *6 (N.D.N.Y June 30, 1993) (citing Ricciuti v. New York City Transit Auth., 796 F. Supp. 84, 86 (S.D.N.Y. 1992)).

"[B]ifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party."  Amato, 170 F.3d at 316 (internal citations omitted).   The decision to bifurcate is "firmly within the discretion of the trial court."  Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984).  Bifurcation is appropriate where the issues to be separated are distinct, involve different types of proof, and where separation will not engender duplication of testimony and evidence.  Id.

Here, all of the applicable factors – convenience, the avoidance of prejudice and the promotion of efficiency – favor the bifurcation of liability from damages with respect to the civil trial of this matter.  In Mineo v. City of New York, 09 CV 2261 (RRM) (MDG), 2013 U.S. Dist. LEXIS 46953 (E.D.N.Y. Mar. 29, 2013), the Court granted defendant's request to bifurcate trial as to liability and damages over plaintiff's objection.  The plaintiff in *Mineo* alleged that he had been sodomized by the defendant police officer and his demand included "compensatory and punitive damages, based on, *inter alia*, emotional distress including proposed evidence of post-traumatic stress disorder."  See Mineo v. City of New York, 2013 U.S. Dist. LEXIS 46953, at *6.

14

The Court expressed concern that evidence of damages would prejudice the defendant and potentially lead to a jury verdict on liability that was not based on the evidence. Id. ("Heaping on additional evidence related to damages will only heighten the prejudice to defendant Kern and may result in a jury verdict that is based on considerations wholly separate and apart from issues of liability. This is particularly the case where a plaintiff seeks punitive damages as well.").

This concern was buttressed by the Court's determination that bifurcation would conserve resources, be "conducive to expedition and economy," and sacrifice little, "particularly when balanced against the potential for prejudice by trying both issues simultaneously." Id. at *6-7. In granting defendant's motion, the Court held that a verdict in favor of plaintiff would be followed immediately by a trial on damages, before the same jury. Id. at *7.

In this case, considerations of prejudice, efficiency and convenience weigh even more strongly than in *Mineo* in favor of bifurcating liability from damages. Without medical damages issues, which include the complex questions of medical causation and plaintiff's purported estimate of future economic cost of his "Life Care Plan," this is a straightforward case requiring only a brief trial. Absent medical damages issues, the jury need only decide whether plaintiff was unlawfully stopped by Officers Vaccarino and Goyco and whether the defendant Officers Setteducato and Shatkin were negligent in the manner that they seat-belted plaintiff and how they drove the prisoner van. Defendants estimate that trial on this question would last two days.

Trying the causation of medical damages and the amount of those damages, on the other hand, will require significant additional time (five days) and will be costly and burdensome for all concerned. money. Plaintiff alleges numerous conditions lasting a period of nearly seven years and dozens of institutions and individual physicians. Plaintiff has listed 8 medical professionals as witnesses in the JPTO who could only speak to damages; 34 sets of medical records from

15

numerous treating physicians and institutions; one proffered expert offered to testify with respect to medical causation; and one proffered expert "life care planner" to testify about the cost of plaintiff's alleged medical and personal needs that he attributes to the conduct of the defendants. Plaintiff values the cost of his medical and personal care at approximately $7 million, and seeks additional pain and suffering damages as well.  These damages from purported medical injuries dwarf the damages that would otherwise be recoverable for plaintiff's simple pain and suffering during the incident or immediately afterwards.

If all of this evidence were admitted over defendants' objections, the trial of these medical issues of causation and damages would require at least five days, none of which would be needed if the jury were to find an absence of liability.  In addition, were the Court to allow trial on all of these issues,[5] the evidence of plaintiff's multiple surgeries and alleged disabilities, allegedly requiring ongoing institutional care, and the cost of his Life Care Plan, would be highly prejudicial to the jury's determination of liability.  See Fed. R. Evid. 403; Amato, 170 F.3d at 316.  Jurors will be tempted to find for the plaintiff out of sympathy, or the mistaken inference that because they were required to hear all of the evidence of plaintiff's long history of medical treatment that they must he expected take it into account.

That prejudice and the potentially unnecessary burden on the Court and the parties can be avoided because the issues of liability and damages are readily separable.  The extent of plaintiff's alleged injuries after the stop and alleged negligence is not relevant to the question of liability. Additionally, bifurcation will not "engender duplication of testimony and evidence," Katsaros, 744 F.2d at 278, because plaintiff himself is the only witness who would have relevant testimony about

---

[5] Defendants contend that none of the evidence regarding plaintiff's alleged cervical spine conditions, surgeries and disabilities should be admissible at trial because of the lack of admissible evidence that they were caused by the incident in this case.

16

both liability and  medical damages.  None of the defendants have knowledge of plaintiff's alleged medical damages, and none of plaintiff's medical witnesses would have relevant testimony on the issue of liability.

The distance in time between the plaintiff's medical treatment and the incident makes that treatment especially irrelevant to any determination of liability.  Even plaintiff's own expert witness says nothing in her report expressing opinions about what occurred in the van; rather, she merely repeats plaintiff's own rendition of the events.  See Stilwell Report, at 2.

If the jury in the first phase finds in plaintiff's favor, then a separate phase of trial would be held with the same jury on the issue of damages.  If the jury finds for plaintiff on the negligence claim, the issues of medical causation and medical damages would be tried in the second phase if the Court overrules defendants' objections to that evidence. [6]  A two-stage trial would have the added benefit of allowing the parties time to attempt to negotiate a settlement with respect to damages, in light of the jury's verdict in the first phase.  The Court could separate the two phases by a short 1-2 business day hiatus would allow the parties an opportunity to attempt to negotiate a settlement in light of the first verdict.[7]

For these reasons, the most prudent, efficient, and expeditious course of action would be to bifurcate liability and medical damages for trial.  Therefore, defendants respectfully move for bifurcation under FRCP 42(b).

---

[6] Defendants contend that the evidence in the case could not support an award of punitive damages. However, if the Court finds plaintiff's claim of punitive damages should go to the jury over defendants objections, then liability for punitive damages would be determined in the first phase.

[7] In the alternative, should the Court prefer that the damages phase be tried at a later time with a different jury, additional provisions could be made with respect to special interrogatories in the first phase.

**POINT VI**

**PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING ANY EVIDENCE RELATED TO CLAIMS THAT HAVE BEEN DISMISSED AND THE JURY SHOULD BE INSTRUCTED THAT THE ARREST AND PROSECUTION OF PLAINTIFF WERE LAWFUL**

In ruling on summary judgment, the Court dismissed several of plaintiff's claims:  false arrest under federal and state law, malicious prosecution under federal and state law, malicious abuse of process, unlawful search, excessive force, deliberate indifference to medical needs, negligent hiring/training/retention, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. Any reference to or evidence regarding these dismissed claims is irrelevant and highly prejudicial and should be precluded under Rules 401, 402 and 403 so as to avoid jury confusion, significant prejudice, and waste of time.  See, e.g., Eng v. Blood, 04-CV-1146 (NAM)(GHL), 2008 U.S. Dist. LEXIS 54802, at **9-11 (N.D.N.Y. July17, 2008) (barring testimony or evidence on emotional damages stemming from dismissed claim as not relevant to remaining claim).  As a result, the only issue before the jury are: (i) whether plaintiff was unlawfully stopped under the Fourth Amendment; and )(ii) whether the defendants were negligent during plaintiff's transportation to the precinct.

Because the dismissed claims are not relevant to the remaining claims, any mention of them or evidence relevant only to those claims would confuse and mislead the jury about the only issues before it.  Such irrelevant evidence includes (i) any evidence about plaintiff's detention, prosecution or court appearances following his arrest; and (ii) any evidence about plaintiff's purported family disputes that he claims were exacerbated by his arrest and prosecution.[8]

---

[8] Plaintiff has listed evidence in this category as Exhibits 17, 20-21, 27-41 & 44 on the JPTO (ECF No. 95).

Among this irrelevant evidence, plaintiff intends to introduce the Certificate of Disposition of the criminal prosecution that arose from his arrest, showing that it was ultimately dismissed. See JPTO, Plaintiff's Exhibit 32 (ECF No. 95); Certificate of Disposition, Ex. I.  Under the Court's ruling on summary judgment (ECF No. 62), the outcome of plaintiff's criminal case is irrelevant and would only serve to confuse the jury.  Ridge v. Davis, 18 Civ. 8958 (JLM), 2022 U.S. Dist. LEXIS 202603 at *5 (S.D.N.Y. Nov. 7, 2022) (precluding introduction of a certificate of disposition because the outcome of plaintiff's criminal case was "'irrelevant to whether the [arresting] officers' actions were objectively reasonable before and during the course of the incident at issue' in an excessive force case")(quoting Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 539 (E.D.N.Y. Oct. 24, 2011)); see Woolfolk v. Baldofsky, 19-CV-3815 (WFK) (ST), 2022 U.S. Dist. LEXIS 120838 at *18 (E.D.N.Y. July 8, 2022) (holding that introduction of the certificate of disposition raises a risk of prejudice and confusion that outweighs any probative value).  In fact, the only purpose that plaintiff could have for introducing such evidence is to improperly suggest to the jury that the case was dismissed because of a problem with the car stop of the van ride.  There is no rational or evidentiary basis for such an inference, and the Certification of Disposition or testimony about the disposition should be precluded.

In addition to this, plaintiff intends to introduce an Order of Protection issued against him, which cites to his arrest as one basis for the Order.  See JPTO, Plaintiff's Exhibit 44; Order of Protection, Exhibit J.  This is likewise entirely irrelevant and prejudicial.  As the Order shows on its face, it is based on part on the arrest for possession of prescription drugs, and makes no mention of the car stop.  For plaintiff to contend that the Order of protection was caused by the car stop is the sort of 'fruit of the poisonous tree' claim that the Court has already correctly ruled is barred as

a matter of law.  See Memorandum and Order, ECF No. 62 at 22.  Accordingly, the Order of

Protection should be precluded, as well as any other evidence in the categories noted above.

In addition, to avoid any juror confusion, the jury should be instructed that (i) the arrest

and prosecution were lawful, and (ii) that should they find that the traffic stop of plaintiff was

unlawful, they may only award damages to plaintiff for that stop based on events occurring until

the moment when police discovered that plaintiff was in possession of pharmaceuticals (which the

Court found on summary judgment was a lawful basis for his arrest).

**POINT VII**

**PLAINTIFF SHOULD BE PRECLUDED FROM
REFERRING TO DEFENSE COUNSEL AS
CITY ATTORNEYS, AND FROM REFERRING
TO CITY INDEMNIFICATION OF THE
INDIVIDUAL DEFENDANTS**

Plaintiff's counsel should be precluded from referring to defense counsel as "City

attorneys" because no claim remains against the City other than that which arises from a state law

theory of *respondeat superior*, as to which scope of employment is not disputed.    Thus, there is

no issue for the jury to determine with respect to the City.  Any mention of the City of New York

would serve the sole purpose of prejudicing the individual defendants.  Plaintiff should not be

permitted to refer to defense counsel as "City Attorneys"  because it would have the effect of

prejudicing the individual defendants.  The jury may be inclined to award plaintiff more money

under the assumption that the City of New York is a "deep pocket" who can afford to pay a higher

judgment than the individual officer would be able to on his own.

The same prejudice would occur if plaintiff is permitted to inform the jury that the

attorneys for the individual defendants are employed by the government as "City attorneys."  See

Hernandez v. Kelly, No. 09-CV-1576 (TLM) (LB), 2011 U.S. Dist. LEXIS 57114, at *17-18

(E.D.N.Y. May 27, 2011) (where the City was not a defendant, precluding plaintiff from referring

20

to the City and directing him to refer to defense counsel as attorneys from the Office of Corporation Counsel); Jean-Laurent v. Hennessy, No. 05-CV-1155 (KAM) (LB), 2011 U.S. Dist. LEXIS 122767, at *45-46 (E.D.N.Y. Oct. 24, 2011) (same).  For these reasons Courts in the Southern and Eastern Districts have not advised the jury that the City is a party where there is no issue as to the City's liability to be tried.  See, e.g., Collado v. City of New York, et al., 11 CV 9041 (DC) (S.D.N.Y. July 20, 2018) (annexed as Ex. L); Harris v. City of New York, et al., 15 CV 6341 (NG), Transcript from January 16, 2019, pp. 11-12 (annexed as Ex. M); Soto v. City of New York, et al., 13 CV 8474 (KBF), Order dated December 1, 2017, pp. 3-4 (annexed as Ex. N).

Accordingly, defendants respectfully request that the City not be mentioned at trial or in any document or exhibit given to the jury, and defense counsel be referred to as precisely that, "defense counsel," or "attorneys from the Office of the Corporation Counsel." [9]

Indemnification also has no bearing on the facts of plaintiff's claims or damages, and would only serve to unfairly prejudice the defendants.  Therefore, pursuant to Fed. R. Evid. 402 and 403, plaintiff should not be allowed to introduce or refer to the possibility that the City of New York will indemnify the defendant officers.  Defendants will not proffer evidence regarding their personal financial resources and ability to pay punitive damages at trial.  Therefore, there is no basis for the admission of possible indemnification evidence and such evidence should be precluded.  See Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997) (the existence of an indemnification agreement is relevant only where the individual defendants adduce evidence of their personal financial resources at trial); see also Jean-Laurent v. Wilkinson, No. 05 Civ. 0583

---

[9] For example, court exhibits given to the jury such as a verdict sheet or jury instructions should contain no caption or the caption should omit the City, and any references to the City indicating that it is a defendant should be redacted from exhibits that may be given to the jury.

(VM), 2009 U.S. Dist. LEXIS 20472, at *8 (S.D.N.Y. Mar. 13, 2009) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City).

**POINT VIII**

**PLAINTIFF SHOULD BE PRECLUDED FROM REQUESTING OR MENTIONING A SPECIFIC DOLLAR AMOUNT OF DAMAGES FROM THE JURY**

Defendants respectfully request that the Court preclude plaintiff from requesting a specific dollar amount from the jury.  While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount, it does disfavor specifying target amounts for the jury to award.  See Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003, 1016 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence.  Id.; see also Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . .").  The Court in Consorti went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations.

Consorti, 72 F.3d at 1016.  As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during his opening statement, during the testimony of any witness and/or during summation.[10]

---

[10] This motion would not apply to specific amounts of economic damages representing specific expenses, to the extent supported by evidence admitted by the Court.  Defendants object to such evidence on other grounds set forth herein.

22

**POINT IX**

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF THE OFFICERS' DISCIPLINARY HISTORIES AND PRIOR LAWSUITS**

Plaintiff should be precluded from inquiring about any disciplinary histories and/or civil rights actions which have been filed against the defendants because such questioning is in direct conflict with Fed. R. Evid. 404(b).  Rule 404(b) states that evidence of past acts "to prove the character of a person in order to show action in conformity therewith" is inadmissible.  Under Rule 404(b), evidence of past acts are only admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"

However, evidence of prior bad acts is not automatically admissible simply because the proponent has articulated some not-for-character purpose.  As the Supreme Court held in Huddleston v. United States, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) also depends on "whether the danger of unfair prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403."  Thus, Rule 404(b) requires a two-part analysis: first, whether the proposed evidence fits within one of the "exceptions" provided by the Rule; and second, even if it does, a balancing test under Rule 403, of whether the evidence's probative value is substantially outweighed by the potential for jury confusion or prejudice.  Lombardo v. Stone, et al., 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *8 (S.D.N.Y. 2002); see also Advisory Committee Notes to Fed. R. Evid. 404(b).

Here, inquiry about any disciplinary histories and/or other civil rights claims could not be used to establish any of the 404(b) exceptions because no past acts of the defendants would be probative of any of the identified characteristics.  Second, the potential for confusion or prejudice

23

substantially outweighs any possible probative value.  Accordingly, plaintiff should be precluded from questioning the individual defendants regarding their disciplinary histories and/or other civil rights claims which have been filed against them.

**POINT X**

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING ALLEGATIONS OF MISCONDUCT AGAINST OTHER POLICE OFFICIALS, EVENTS IN THE NEWS, OR USING INFLAMMATORY TERMS TO DESCRIBE POLICE ACTIVITY**

Defendants respectfully request that the Court bar plaintiff from referring to unrelated purported instances of police misconduct, class actions, and criminal investigations, pursuant to Fed. R. Evid. 402 and 403.  Defendants submit that references to other allegations of police misconduct unrelated to this case are irrelevant, inadmissible, and would only serve to inflame the jury against the defendants and the NYPD.

As the Court is aware, there is significant public attention to police-involved incidents in the news media.  Allowing plaintiff to reference these events, whether specifically or generally, or any other allegation of misconduct in the public domain, would be highly prejudicial, inflame the jury, and would have no probative value as to the events in this matter.  Whether some other officer at some other time allegedly violated the constitutional rights of another person has no bearing on the salient facts.  Further, defendants are unable to defend or reject the conduct of other officers or events in other municipalities.  Fed. R. Evid. 403.  Lastly, allowing plaintiff to make such references would allow inadmissible hearsay because plaintiff would be seeking to offer out-of-court statements for their truth.  Fed. R. Ev. 801(c).

Finally, plaintiff should be barred from using terminology and colloquialisms such as "testilying" and "blue wall of silence."  Such statements are also highly prejudicial and

inflammatory.  Because these terms are based on conjecture and emotion and not based on any evidence, the defendants have no means to defend against their use or refute the characterization implied by the speaker.  Further, usage of these terms as well as other allegations of misconduct turns plaintiff's counsel into an unsworn witness by implying that he has some special knowledge of police officer involvement in other events.  As a result, the Court should bar plaintiff or plaintiff's counsel from referencing any of these phrases or terms, or other incidents or lawsuits, or events reported in the media.

**POINT XI**

**DEFENNDANTS  RESERVE  THE  RIGHT  TO MAKE   ADDITIONAL   OBJECTIONS   AS NECESSARY AT TRIAL**

Defendants cannot anticipate all evidentiary issues that might arise during the trial of this matter.  Accordingly, defendants respectfully reserve the right to make additional objections at trial.

**CONCLUSION**

For the foregoing reasons, defendants' motions *in limine* should be granted.

Dated:      New York, New York
            June 5, 2023

> **HON. SYLVIA O. HINDS-RADIX**
> Corporation Counsel of the City of New York
> Attorney for Defendants
> 100 Church Street, Rm 3-177
> New York, New York 10007
> (212) 356-2344
> ascheine@law.nyc.gov
>
> By:      _____
>          Alan H. Scheiner
>          Assistant Corporation Counsel

25
